FILED

03 MAR 25 AM 10:03

U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

SAMUEL B. CHANNELL,

    Plaintiff,

vs.                                  CASE NO. CV-02-J-877-S

JEFFERSON COUNTY EMPLOYEES
CREDIT UNION,

    Defendant.

ENTERED

MAR 2 5 2003

**MEMORANDUM OPINION**

    Currently pending before the court are cross motions for summary judgment by the plaintiff (doc. 23) and defendant (doc. 25) and evidentiary submissions in support of the motions.

**PROCEDURAL HISTORY**

    Plaintiff commenced this action by filing a complaint, which was subsequently amended (doc. 5) alleging that the defendant discriminated against him, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, by terminating his employment. Amended Complaint at ¶ 18. The court considered this motion upon the pleadings, briefs, and evidentiary submissions. Having considered all of the foregoing, the court concludes that the plaintiff's motion for summary judgment should be **DENIED** and the defendant's motion for summary judgment should be **GRANTED**.

**FACTUAL BACKGROUND**

33

The plaintiff began working for the defendant, Jefferson County Employees Credit Union ("JCECU"), as a full-time compliance officer in March or May of 1990. Plaintiff depo. at 73. His job title was changed to Administrative Specialist after the arrival of Bob Smith, Vice President of Operations. *Id*. at 75-76, 209.[1] The plaintiff claims that Mr. Smith's arrival to JCECU and his influence therein contributed to the plaintiff's demise from the organization. *Id.* at 83-84. The plaintiff claims that Mr. Smith would harass the defendant about his production, attendance and punctuality, and failed to acknowledge his medical condition. *Id.* at 101-104. The plaintiff's chronic attendance problems are not disputed as he admits he reported late to work on numerous occasions. Plaintiff depo. 102, 110-112, 216. However, the plaintiff's inability to arrive at work on time did not cause his termination. Rather, the plaintiff was ultimately terminated for calling his immediate supervisor a "stupid mother fucker" to another employee, who reported this statement. Faulkner depo. at 47-54; Young declaration, ¶¶ 2-3.

The plaintiff had used the term "Hell" in front of Smith and several co-workers. Plaintiff depo. at 91-94. The plaintiff went to each of these co-workers, including Nicole Young, to apologize for use of this term. *Id*. at 93-94. While apologizing to Ms. Young, the plaintiff made the reference in

---

[1] When the plaintiff was initially hired, his supervisor was Neal Spangler. Faulkner depo. at 16. Once Mr. Smith arrived, the plaintiff was to report to him, who would then report the Mr. Faulkner, President of JCECU. *Id*. at 13

2

question to his supervisor, Smith. Young declaration, ¶¶ 2-3 and Exhibit A thereto. The plaintiff agrees that the use of this language is just cause for termination. Plaintiff depo. at 230-34. Profanity is listed as unacceptable conduct for which the defendant may take disciplinary action in defendant's Personnel Policies and Procedures Manual. Defendant Exhibit 2B at 25-26. The plaintiff admits he had previously been counseled for insubordination. Plaintiff depo. at 267-269. He does not deny making the statement at issue but rather asserts he does not recall whether or not he made it. Plaintiff depo. at 234.

### STANDARD FOR EVALUATING A SUMMARY JUDGMENT MOTION

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-323. The party moving for summary

judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id*. at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587; *see also Anderson*, 477 U.S. at 249.

"The mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is material to an issue affecting the outcome of the case ... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AL Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  A factual dispute regarding a non-material issue will not preclude the moving party from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th

Cir. 1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## DISCUSSION

The ADA provides that no covered employer shall discriminate against a "qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case under the ADA, the plaintiff must show that (1) he has a disability; (2) he is a qualified individual, "which is to say, able to perform the essential functions of the employment position that he holds ... with or without reasonable accommodation;" and (3) the defendant discriminated against him because of the disability. *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000); citing *Hillburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220,

1226 (11th Cir. 1999); *see also Swain v. Hillsborough County School Board*, 146 F.3d 855, 857 (11th Cir. 1998). In addition, the plaintiff must show that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled. *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996).

The defendant argues that the plaintiff is unable to establish that he is "disabled" as that term is defined by the ADA. Without meeting such definition, the plaintiff is necessarily precluded from establishing that he was wrongfully suspended due to a disability in violation of the ADA.

The ADA defines disability as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual, or (B) a record of such an impairment, or (C) being regarding as having such an impairment. 42 U.S.C. § 12102(2). An individual is deemed to be disabled for purposes of the ADA if he satisfies any one of these three definitions. *Gordon v. E.L. Hamm and Associates, Inc.*, 100 F.3d 907, 911 (11th Cir. 1996). "A physical impairment standing alone, however, is not necessarily a disability as contemplated by the ADA." *Id.* Plaintiff apparently argues that he falls within all of three of the categories.[2] Plaintiff's motion in opposition

---

[2] Regardless of which category the plaintiff claims, the plaintiff must prove an impairment, real or otherwise, as well as that he was able to perform his essential job functions in spite of that impairment and that he was discriminated against based on that impairment. For reasons explained herein, the court does not find it necessary to undertake all three analyses. Rather, the reasoning applied to actually having an impairment also apples to the other two categories of disability as defined by the ADA.

at 5-7.

The United States Supreme Court has fashioned a three part analysis for consideration of a claim under subsection (A), above: (1) whether the plaintiff has a physical or mental impairment; (2) identification of the life activity upon which the plaintiff relies and determining whether it constitutes a major life activity under the ADA; and (3) whether the impairment substantially limits the major life activity. *Bragdon v. Abbott*, 524 U.S 624, 631, 118 S.Ct. 2196, 2202 (1998). Thus, to establish a prima facie case and survive summary judgment, the plaintiff must present sufficient evidence to create a genuine issue of material fact as to whether his physical impairments substantially limit his ability to partake in a major life activity. *Id.*, 524 U.S. at 652-653; 118 S.Ct. at 2212. *See also Swain*, 146 F.3d at 857.

The ADA does not define the term "major life activity." The EEOC has defined major life activity as "functions such as caring for oneself, performing manual tasks, walking , seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i)(1996). "Substantially limited" is defined by the EEOC for ADA purposes to mean:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(1996). In deciding whether a major life activity

has been substantially limited, the EEOC provides several factors to consider:

>    (i)   The nature and severity of the impairment;
>
>    (ii)  The duration or expected duration of the impairment; and
>
>    (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2 (j)(2)(1996); *Gordon*, 100 F.3d at 911.

In the instant action, the court finds that the plaintiff suffers from bipolar disorder, which is a mental impairment. The defendant does not dispute that the plaintiff has such an impairment. Rather, the parties dispute whether this impairment impacts the plaintiff's ability to engage in a major life activity. The plaintiff claims that he has limitations on the major life activity of interacting appropriately with others.[3] Plaintiff's brief in support of summary judgment, at 13.

The plaintiff has submitted no evidence to support his claim of limitations in getting along with others.[4] The only evidence submitted, aside from plaintiff's testimony, is a letter from Dr. Michael S. Vaughn, the

---

[3] This identification of a limitation is made by the plaintiff for the first time in his motion for summary judgment. It was never mentioned in the plaintiff's complaint, amended complaint, response to defendant's motion for summary judgment, or any of the deposition testimony.

[4] The court notes that the plaintiff relies on an article from the National Institute of Mental Health stating that bipolar disorder can result in extreme irritability. Plaintiff Exhibit D. However, this is not evidence that plaintiff suffers from extreme irritability.

plaintiff's doctor, which the plaintiff gave to his employer for proof of his bipolar disorder. Defendant's Exhibit B5.[5] However, this letter ends with the Dr. Vaughn stating, "it appears [the plaintiff] is heading in the right direction." The plaintiff has not submitted any evidence to show that he is more restricted in his ability to get along with others than the average person in the population, or that he has any restrictions at all from his condition. See 29 C.F.R. § 1630.2(j)(1)(ii); Swain, 146 F.3d at 857 ("The term 'substantially limited' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.").

Additionally, the plaintiff offers no support for his argument that "interacting appropriately with others" is a major life activity. Rather, the plaintiff simply argues that his use of profanity is a manifestation of his disorder. Plaintiff's brief in support at 13-14. Even if "interacting appropriately with others" is considered to be a major life activity, the plaintiff must present evidence that he was substantially limited in this life activity because of his impairment. See Bragdon, 524 U.S. at 631, 118 S.Ct. at 2202. Again, the sole evidence of that plaintiff presents of this alleged

---

[5] Dr. Vaughn has maintained the prescribing of the medication, which was previously prescribed by Dr. Charles Neville, who diagnosed the plaintiff with a bipolar disorder, but who is now deceased. Consequently, there is no direct evidence from a doctor who has diagnosed the plaintiff with a bipolar disorder.

impairment is his use of profanity on the occasion for which he was terminated.

In his deposition, the plaintiff repeatedly states that he was, and remains, able to perform all functions of his job. Plaintiff's Depo. 19, 26, 41, 120, 121. *See Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000) (The plaintiff testified that even when her condition was allegedly being aggravated by work-related stress she was able to perform the job, resulting in the court upholding the district judge's finding that the plaintiff was not disabled within the meaning of the statute and summary judgment on the ADA claim was appropriate). The plaintiff testified that the only problem he has with regard to work was being able to get to work on time. *Id.* at 120. However, the plaintiff further testified that once he got to work he was able to do his job fine. *Id*. at 120. *See also* plaintiff's brief in response at 5 (arguing that the fact that plaintiff was allowed to adjust his work schedule was evidence that the defendant regarded the plaintiff as disabled).

In the facts before this court, the plaintiff was not terminated based on an inability to perform his job with or without accommodation. Rather, the defendant asserts the legitimate, non-discriminatory reason for his termination was that he called his immediate supervisor a "stupid MF," which plaintiff admits is a terminable offense.[6] Thus, the court finds that even if

---

[6] The burden shifting analysis in Title VII cases is equally applicable to cases brought under the ADA. *See Durley v. APAC, Inc.*, 236 F.3d 651, 656 (11th Cir. 2000); *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999);

10

the plaintiff established a prima facie case under the ADA, the defendant has put forth a legitimate, non-discriminatory reason for his termination. Therefore, the burden shifts back to the plaintiff to show that the defendant's legitimate reason is really a pretext for discrimination. *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

The plaintiff argues in his brief that his disability, bi-polar disorder, caused him to be repeatedly late for work, was a substantial motivating factor leading to his termination. However, the plaintiff then argues that the **sole** reason for his termination was his use of a pejorative term in referring to Smith. Plaintiff's brief in support at 15 and n. 2; plaintiff's brief in opposition at 10 and n. 1. Thus, whether or not the defendant attempted to accommodate the plaintiff by allowing him to report to work later than his co-workers is irrelevant to the issues before this court. In essence, the plaintiff referred to his superior in a derogatory manner, he was terminated for it, and now argues that his disability should protect him from such termination. This court disagrees, as the purpose of the ADA has never been to shield a disabled individual from all adverse employment actions.

The plaintiff argues that his termination was pretextual, but has not shown that a "non-disabled" employee would not have been terminated for using the language in question in reference to his supervisor. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir. 1984). While the plaintiff states other employees were not disciplined for other acts,

none of the employees to whom plaintiff points committed a similar act. *See* plaintiff depo. at 251-260.

Clearly, the use of profane language toward other employees is a valid ground for disciplinary action. Defendant exhibit 2B at 26.

> The district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.' *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation omitted).

*Silvera v. Orange County School Bd.,* 244 F.3d 1253, 1258 (11th Cir. 2001). In other words "'a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason' as long as 'the reason is one that might motive a reasonable employer.'" *Pennington v. City of Huntsville*, 261 F.3d 1262,1267 (11th Cir. 2001); citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997). *See also Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). This court finds terminating an employee for calling his supervisor a "stupid MF" to be within the realm which might motivate a reasonable employer to terminate the plaintiff. As such, the court can find no evidence of pretext.

The plaintiff also asserts for the first time in his motion for summary judgment that calling his supervisor a "stupid MF" is protected speech within

the meaning of the First Amendment.[7]  Plaintiff's brief in support of plaintiff's motion for summary judgment, at 16-17.  As the plaintiff has never stated a cause of action for violation of his rights under the First Amendment, the court finds the plaintiff cannot prevail on a theory that he engaged in protected speech.

## CONCLUSION

In consideration of the foregoing, the court can find no genuine issue of material fact left for trial.  As such, defendant's motion for summary judgment is **GRANTED** and the plaintiff's motion for summary judgment is **DENIED**.

**DON**E and **ORDERED** this the 25 day of March, 2003.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

---

[7]The court also notes that the plaintiff relies on *McNely v. Ocalla Star-Banner Corp.*, 99 F.3d 1068 (11th Cir.1996), for the proposition that derogatory remarks aimed at an employer in an ADA context are protected expression.  The court notes that case found that filing an EEOC charge was protected expression.  Specifically, the Eleventh Circuit Court of Appeals states "[I]n Counts II and IV, McNely alleged that the defendants had retaliated against him for engaging in protected expression, specifically for filing his EEOC grievance." *Id.*, at 1071.